UNITED STATES of America, Appellee, Cross–Appellant,

v.

Thomas MICKENS, Anthony Jacobs, Shelby Kearney, Defendants–Appellants,

Bettina Jacobs Celifie, Defendant–Appellant, Cross–Appellee.

Nos. 157–161, Dockets 90–1061 to 90–1064 and 90–1097.

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 1990.

Decided Feb. 26, 1991.

John L. Pollok, New York City (Michael H. Gold, Susan C. Wolfe, Hoffman & Pollok, New York City of counsel), for defendant-appellant Mickens.

Robert L. Ellis, New York City, for defendant-appellant Kearney.

Georgia J. Hinde, New York City (Vivian Shevitz, New York City of counsel), for defendant-appellant Jacobs.

Chris P. Termini, Melville, N.Y. (Scalzi & Nofi, of counsel), for defendant-appellant, cross-appellee Celifie.

Kirby A. Heller, Asst. U.S. Atty., E.D. N.Y. (Andrew J. Maloney, U.S. Atty., Matthew E. Fishbein, Susan Corkery, Asst. U.S. Attys., E.D.N.Y., of counsel), for appellee, cross-appellant.

Before MESKILL and ALTIMARI, Circuit Judges, and METZNER, District Judge.*

ALTIMARI, Circuit Judge:

Defendants-appellants Thomas Mickens, Anthony Jacobs, Shelby Kearney, and Bettina Jacobs Celifie appeal from judgments of conviction, entered in the United States District Court for the Eastern District of New York (Thomas C. Platt, Chief Judge).

Following a four-month jury trial, Mickens was convicted of conspiracy to distribute and to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (1988); conspiracy to defraud the United

---

* The Honorable Charles M. Metzner, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

States, in violation of 18 U.S.C. § 371 (1988); four counts of income tax evasion, in violation of 26 U.S.C. § 7201 (1988); one count of filing a perjurious income tax return, in violation of 26 U.S.C. § 7206(1) (1988); eight counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) & (ii) (1988); and, one count of structuring a financial transaction as part of a pattern of illegal activity, in violation of 31 U.S.C. § 5324(3) (1988). Shelby Kearney and Bettina Jacobs Celifie were each convicted of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Celifie was also convicted of one count of structuring a financial transaction as part of a pattern of illegal activity, in violation of 31 U.S.C. § 5324(3). Anthony Jacobs pleaded guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846; conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; and, two counts of distributing cocaine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C).

On appeal, defendants-appellants Mickens, Kearney, and Celifie contend that comments made by the district court during trial deprived them of their constitutional right to a fair trial. They also challenge the court's denial of a motion to suppress certain evidence, its rulings on various evidentiary questions posed during the course of the trial, and its instructions to the jury regarding the elements of a section 1956 violation. Moreover, they question the constitutionality of the currency reporting requirements of 31 U.S.C. § 5313 (1988). Defendant-appellant Jacobs appeals from his sentence of imprisonment. He contends that, in calculating his offense level, the district court improperly attributed to him the entire quantity of narcotics for which Mickens was found responsible. The government cross-appeals from the district court's decision to downwardly depart in sentencing defendant-appellant Celifie.

For the reasons set forth below, the judgments of the district court are affirmed in part, reversed in part, and remanded.

## BACKGROUND

Between 1984 and 1988, defendant-appellant Thomas Mickens directed a lucrative cocaine distribution network in Queens, New York. At trial, two law enforcement officers testified about numerous undercover cocaine purchases from individuals identified as Mickens' underlings. For example, on two separate occasions undercover officer Austin Fields purchased cocaine from defendant-appellant Anthony Jacobs, a reputed "lieutenant" in the Mickens organization. On another occasion, surveillance agents spotted Mickens in the vicinity of a narcotics transaction between undercover Officer Terance Miller and another Mickens' associate, George Jenkins. Officer Miller also purchased cocaine directly from Mickens while both men were seated in an undercover police car.

In addition to the direct evidence of narcotics activity, the prosecution presented evidence of Mickens' lavish spending. The testimony of several automobile salesmen and insurance agents connected Mickens to the purchase of eighteen automobiles, costing a total of approximately $556,000. Trial evidence also established that Mickens purchased some sixteen properties, including commercial property in Queens, a $730,000 residence in Dix Hills, New York, a residence in Miami, Florida, and a condominium in California. Mickens' former attorney testified that he assisted Mickens in purchasing several properties using cash and money orders. He also testified that he helped Mickens launder money by preparing contracts and closing documents that significantly understated the properties' actual purchase prices.

Additional evidence of Mickens' automobile and real estate purchases was obtained during a warrant-authorized search of the Dix Hills residence. The warrant permitting the search was obtained on the basis of observations made by FBI agent Nerisa Pilafian during a "protective sweep" of the premises in connection with Mickens' arrest. Mickens moved before the district court to suppress the evidence obtained from the Dix Hills residence, claiming that Agent Pilafian's protective sweep was not

justified by the circumstances of the arrest. This motion was denied.

Many of Mickens' automobile and real estate purchases were accomplished through the use of nominees, including defendants-appellants Kearney and Celifie. For example, trial evidence established that Kearney, who was Mickens' girlfriend, acted on Mickens' behalf in the purchases of property in Hempstead, New York and the residence in Dix Hills, New York. The prosecution also presented evidence that Bettina Jacobs Celifie acted as Mickens' nominee in purchasing the California condominium, as well as a $133,350 yacht.

Following a four-month jury trial, defendant-appellant Mickens was convicted of, *inter alia*, conspiracy to distribute and to possess with intent to distribute cocaine, conspiracy to defraud the United States, income tax evasion, and money laundering. He was sentenced to an aggregate term of imprisonment of thirty-five years, a fine of $1,000,000, and a special assessment of $800. Defendants-appellants Kearney and Celifie were each convicted of conspiracy to defraud the United States and money laundering, and Celifie was also convicted of structuring a financial transaction as part of a pattern of illegal activity. Kearney was sentenced to concurrent five-year terms of imprisonment on each count, to be followed by two years' supervised release, a fine of $200,000, and a $100 special assessment. Celifie was sentenced, pursuant to a downward departure, to concurrent eighteen-month terms of imprisonment on each count, to be followed by two years' supervised release, and a $150 special assessment. Defendant-appellant Anthony Jacobs, who pleaded guilty to conspiracy to distribute cocaine, conspiracy to defraud the United States, and distributing cocaine, was sentenced to 327 months' imprisonment, to be followed by a five-year term of supervised release, and a special assessment of $200. This appeal and cross-appeal followed.

## DISCUSSION

I. The Unfair Trial Claim.

██ Defendants-appellants Mickens, Kearney and Celifie claim that the district court's admonitions to counsel and questions of witnesses deprived them of a fair trial. Defendants-appellants claim that the court "poisoned the courtroom atmosphere and prevented a fair trial." We disagree.

While many of the court's remarks were unfortunate, their cumulative effect was not a deprivation of the right to a fair trial. A trial judge " 'need not sit like a "bump on a log" throughout the trial.' " *United States v. Bejasa*, 904 F.2d 137, 141 (2d Cir.) (quoting *United States v. Pisani*, 773 F.2d 397, 403 (2d Cir.1985)), *cert. denied*, —— U.S. ——, 111 S.Ct. 299, 112 L.Ed.2d 252 (1990). As this Court recently stated:

> Judges, being human, are not immune to feelings of frustration at the occasional antics or inartfulness of attorneys or impatience at the evasiveness of witnesses. Such feelings may give vent to remarks which, judged in isolation from the totality of the record through the dispassionate looking glass of hindsight, "would better have been left unsaid." Yet, analysis of such comments, taken out of context of the entire record, is not the proper basis for review. Rather, we must make "an examination of the entire record," in order to determine whether the defendant received a fair trial.

*Id.* at 141 (quoting *United States v. Robinson*, 635 F.2d 981, 985 (2d Cir.1980), *cert. denied*, 451 U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852 (1981), and *United States v. Mazzilli*, 848 F.2d 384, 389 (2d Cir.1988)). Viewing the record in the present case in its entirety, it is clear that defendants-appellants received a fair trial. The district court's occasional intemperate remarks did not substantially taint defendants-appellants' trial. It must be noted that these remarks were provoked to some extent by one defense counsel's despicable verbal assault on the court. That attorney's conduct was so egregrious that, after verdict, the court advised counsel that it intended to file a complaint with the Grievance Committee of the Eastern District of New York. Moreover, any possible prejudice to defendants-appellants was cured by the

court's cautionary instruction.[1] *See United States v. Bejasa,* 904 F.2d at 141; *United States v. Gurary,* 860 F.2d 521, 527 (2d Cir.1988), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1931, 104 L.Ed.2d 403 (1989).

## II. The Motion To Suppress.

■ Defendant-appellant Mickens argues that the district court erred in denying his motion to suppress evidence obtained in the warrant-authorized search of the Dix Hills residence. He claims that the warrant was issued on the basis of information gathered during an improper "protective sweep" of the residence, conducted by FBI agent Nerisa Pilafian in the process of arresting Mickens. Again, we disagree.

■ Law enforcement officers may conduct a protective sweep of a residence during the course of an arrest if they possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 1099–1100, 108 L.Ed.2d 276 (1990). This standard was satisfied in the present case. The arresting officers had reason to believe that defendant-appellant Kearney and her mother—both of whom resided in the house—were on the premises. Moreover, as the district court found, "agents had reason to believe that Mickens was a drug dealer who was known to be violent and who travelled with others." Thus, Agent Pilafian had a reasonable basis to conduct the protective sweep of the Dix Hills residence. *See United States v. Escobar,* 805 F.2d 68, 71–72 (2d Cir.1986); *United States*

*v. Jackson,* 778 F.2d 933, 937 (2d Cir.1985), *cert. denied,* 479 U.S. 910, 107 S.Ct. 308, 93 L.Ed.2d 282 (1986). Moreover, the scope of Agent Pilafian's protective sweep did not extend beyond the "cursory inspection" deemed proper by the Supreme Court. *Buie,* 110 S.Ct. at 1099. Accordingly, the district court properly refused to suppress the evidence yielded by the warrant-authorized search of the Dix Hills residence.

## III. The Evidentiary Rulings.

### A. *The admission of threat evidence.*

■ Defendant-appellant Mickens challenges the district court's decision to permit Mickens' former attorney to testify that Mickens had made a hand gesture in the shape of a gun as the former attorney entered the courtroom to testify. Mickens argues that this testimony lacked probative value and that the former attorney's testimony that Mickens had pointed at the court, not at the attorney, was unduly prejudicial. This challenge lacks merit.

Evidence, such as the former attorney's testimony, offered under Fed.R.Evid. 404(b) may be admitted if the court: 1) determines that the evidence is offered for "a purpose other than to prove the defendant's bad character or criminal propensity," *United States v. Colon,* 880 F.2d 650, 656 (2d Cir.1989); 2) determines that the evidence is relevant under Fed.R.Evid. 401 & 402, and is more probative than unfairly prejudicial under Fed.R.Evid. 403, *id.* (quoting *United States v. Ortiz,* 857 F.2d 900, 903 (2d Cir.1988), *cert. denied,* 489 U.S. 1070, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989)); and 3) provides an appropriate lim-

---

1. Chief Judge Platt charged:

 During the course of the trial, I have had to admonish or reprimand attorneys on both sides of the case because I did not believe that what one or more of them was doing was proper. You should draw no inference against an attorney or his or her client.... It is irrelevant whether you like a lawyer or whether you believe I like a lawyer. The issue before you is not which attorney is more likeable or the better attorney. The issue is whether or not the government has sustained its burden of proof.

 \* \* \* \* \* \*

 The fact that the Court has asked one or more questions of a witness for clarification or admissibility of evidence purposes is not to be taken by you in any way as indicating that the Court has any opinion as to the guilt or lack thereof of a defendant in this case, and you are to draw no such inference therefrom. That determination is up to you, and you alone, based on all of the facts in this case and the applicable law in these instructions.

iting instruction to the jury, if one is requested, *id.* (citing *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988), and *United States v. Ortiz,* 857 F.2d at 903).

In the present case, the standards for admission of Rule 404(b) evidence were satisfied. The testimony about the hand gesture was not offered to prove Mickens' bad character or criminal propensity, but rather to prove his consciousness of guilt. *See United States v. Bein,* 728 F.2d 107, 114 (2d Cir.), *cert. denied,* 469 U.S. 837, 105 S.Ct. 135, 83 L.Ed.2d 75 (1984). The testimony was relevant since an effort to intimidate a key prosecution witness was probative of Mickens' state of mind. Mickens argues that, because the testimony was that the threat was not directed at his former attorney, but at the court, the evidence should have been excluded under Rule 403. However, the fact that Mickens' hand gesture was directed at the court does not disprove that he attempted to threaten the witness. Indeed, Mickens' former attorney testified that he felt intimidated by the gesture. Moreover, only a preliminary hearing on the details of the witness' proposed testimony would have avoided the unanticipated statement that Mickens' gesture was directed at the court. While, in retrospect, such a preliminary hearing may have been helpful, it is simply not required by Rule 404(b). *See Huddleston,* 485 U.S. at 686–89, 108 S.Ct. at 1499–1501. We also note that Mickens' acquittal of two counts of distributing cocaine belies the argument that admission of the threat evidence was unduly prejudicial to Mickens. In sum, the district court's decision to admit the testimony about Mickens' apparent threat was not an abuse of discretion. *See United States v. Qamar,* 671 F.2d 732, 736 (2d Cir.1982); *see also United States v. Jamil,* 707 F.2d 638, 642 (2d Cir.1983).

### B. *The evidence of a prior narcotics conviction.*

■ Mickens contends that the district court erred in admitting evidence, pursuant to Fed.R.Evid. 404(b), of Mickens' prior involvement in narcotics activity, including his 1983 conviction for possessing and sell-

ing cocaine. Defendant-appellant Kearney also argues that the court improperly admitted evidence that she visited Mickens while he was serving his prison term for the 1983 conviction. We reject both challenges.

Applying the standards discussed above, we hold that this evidence was properly admitted under Rule 404(b). Mickens' prior involvement in narcotics activity was relevant to the prosecution's tax evasion and money laundering theory that narcotics sales provided the cash which Mickens spent so lavishly. In addition, Kearney's visits to Mickens while he was incarcerated were relevant to the second element of the money laundering charge, *i.e.,* that Kearney knew that the laundered funds derived from an unlawful source. The district court's judgment that the probative value of this evidence was not substantially outweighed by its potential prejudicial effect was not an abuse of discretion. *See United States v. Smith,* 727 F.2d 214, 220 (2d Cir.1984); *United States v. Birney,* 686 F.2d 102, 106 (2d Cir.1982). Moreover, the court provided a limiting instruction to the jury, informing them of the appropriate use of this evidence. *See United States v. Ortiz,* 857 F.2d at 903.

### C. *The in-court identification.*

■ Defendant-appellant Mickens contends that the court erred in permitting various automobile salesmen to identify him in court because those witnesses were previously shown unduly suggestive photo arrays. This contention is unpersuasive.

The pre-trial photo array procedure which Mickens challenges was not "unduly suggestive of the suspect's guilt." *Dickerson v. Fogg,* 692 F.2d 238, 244 (2d Cir.1982). Mickens' arguments notwithstanding, the fact that his picture was the only photocopy in the array is insignificant. *Cf. United States ex rel. Cannon v. Montanye,* 486 F.2d 263, 267 (2d Cir.1973), *cert. denied,* 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974); *United States v. Fernandez,* 456 F.2d 638, 641 (2d Cir.1972). Indeed, this difference was so minor that

the district court did not notice that Mickens' picture was a photocopy until the defense pointed it out. *See United States v. Archibald,* 734 F.2d 938, 940 (2d Cir.1984); *see also Jarrett v. Headley,* 802 F.2d 34, 41 (2d Cir.1986). Even if Mickens' argument was accepted, it would be of little import since Mickens does not contest his involvement in the transactions in which he was identified. Mickens' defense is *not* mistaken identity, but that the various purchases were not made using the proceeds of narcotics activity. Accordingly, it was not error to permit the automobile salesmen who had spotted Mickens in the array to identify him in court.

### IV. The Jury Instruction Claim.

■ Defendants-appellants Mickens, Kearney and Celifie contend that the district court's instructions to the jury regarding the elements of money laundering, 18 U.S.C. § 1956, constructively amended the indictment against them. We disagree.

To prove a violation of section 1956, the government must establish that a financial transaction "involves the proceeds of *specified* unlawful activity." 18 U.S.C. § 1956(a)(1) (emphasis added). The government is further required to demonstrate that the defendant knew that "the property involved in [the] financial transaction represents the proceeds of *some form* of unlawful activity." *Id.* (emphasis added). The indictment counts charging defendants-appellants with money laundering, in pertinent part, stated:

> [Defendants-appellants] did knowingly and wilfully conduct and attempt to conduct a financial transaction which involved the proceeds of a specified unlawful activity, to wit: narcotics distribution, knowing that the property involved in such financial transaction, to wit: United States currency, represented the proceeds of some form of unlawful activity and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the source, the ownership and the control of the proceeds of a specified unlawful activity.

Paralleling the indictment, the district court instructed the jury, *inter alia:*

> The first element of the offense which the government must prove beyond a reasonable doubt is that the defendant you are considering in the count you are considering conducted or attempted to conduct a financial transaction involving property constituting the proceeds of specified unlawful activity, specifically, narcotics distribution.

> \* \* \* \* \* \*

> The second element of the offense which the government must prove beyond a reasonable doubt is that the defendant you are considering in the count you are considering knew that the property involved in the financial transaction was the proceeds of some form of an unlawful activity.

This instruction accurately stated the applicable law and conformed to the terms of the indictment.

The defendants-appellants focus, however, on the court's explanation of the second element of section 1956. In this regard, the court instructed:

> I instruct you that this [second] element refers to a requirement that the defendant knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under state or federal law.

> I instruct you as a matter of law that narcotics distribution is a felony, as is, for example, gambling.

Again, this instruction adheres to the indictment. Moreover, since the challenged instruction pertained only to the second element of section 1956, it did not enlarge the prosecution's theory regarding the first element, *i.e.,* that the laundered money represented proceeds from narcotics activity. Accordingly, defendants-appellants' contention that the indictment charging them with violating section 1956 was constructively amended must be rejected. *See United States v. Weiss,* 752 F.2d 777, 787–88 (2d Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985).

## V. The Constitutionality of 31 U.S.C. § 5313.

■ Defendants-appellants Mickens and Celifie moved before the district court for the dismissal of indictment counts alleging violation of 18 U.S.C. § 1956(a)(1)(B)(ii) and 31 U.S.C. § 5324 (1988), claiming that the domestic currency transaction report ("CTR") requirements giving rise to those charges are unconstitutional. Specifically, Mickens and Celifie argued that the CTRs required under 31 U.S.C. § 5313(a) (1988) violate the fifth amendment privilege against self-incrimination. The district court denied this motion, and defendants-appellants now challenge that denial. We reject this challenge.

The fifth amendment privilege against self-incrimination protects against governmental compulsion of self-incriminating testimonial communication. *See Fisher v. United States*, 425 U.S. 391, 397, 96 S.Ct. 1569, 1574, 48 L.Ed.2d 39 (1976); *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973). Section 5313(a) and its implementing regulations, 31 C.F.R. § 103.22 (1990), require financial institutions to report certain transactions. *See United States v. St. Michael's Credit Union*, 880 F.2d 579, 581–82 (1st Cir.1989). Individuals, including defendants-appellants, are not themselves compelled to report their transactions. *See United States v. Hoyland*, 914 F.2d 1125, 1130 (9th Cir. 1990). Absent such compulsion, Mickens, Kearney, and Celifie may not complain that their fifth amendment rights were violated. *See Couch v. United States*, 409 U.S. at 328, 93 S.Ct. at 616 ("The Constitution explicitly prohibits compelling an accused to bear witness 'against himself'; it necessarily does not proscribe incriminating statements elicited from another."); *see also Hoyland*, 914 F.2d at 1130.

■ Moreover, even if 31 U.S.C. § 5313(a) were construed to compel reporting by defendants-appellants, we would find no fifth amendment violation. Reporting requirements have been considered violative of the fifth amendment if they "would almost necessarily provide the basis for criminal proceedings against [the re-porting individual] for the very activity that he was required to disclose." *United States v. Dichne*, 612 F.2d 632, 640 (2d Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980); *see Grosso v. United States*, 390 U.S. 62, 67–68, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968); *Marchetti v. United States*, 390 U.S. 39, 55–57, 88 S.Ct. 697, 706–07, 19 L.Ed.2d 889 (1968). By contrast, section 5313(a) is a legitimate reporting requirement which targets transactions without regard to the purposes for which they are undertaken. *See Dichne*, 612 F.2d at 639–41. Section 5313(a) does not require the reporting of information that would necessarily be criminal. Like the foreign CTR requirements considered in *Dichne*, section 5313(a)'s reporting requirements do not violate the fifth amendment privilege against self-incrimination. *See United States v. Kaatz*, 705 F.2d 1237, 1242 (10th Cir.1983); *United States v. Keller*, 730 F.Supp. 151, 156 (N.D.Ill.1990); *United States v. Kimball*, 711 F.Supp. 1031, 1032–34 (D.Nev.1989); *United States v. Scanio*, 705 F.Supp. 768, 778–79 (W.D.N.Y.1988).

## VI. Anthony Jacobs' Sentence.

■ Defendant-appellant Anthony Jacobs, who pleaded guilty to conspiracy to distribute cocaine, conspiracy to defraud the United States, and distributing cocaine, challenges the sentence imposed on him by the district court. He contends that his sentence, which exceeds twenty-seven years' imprisonment, resulted from misapplication of the Sentencing Guidelines. We agree and, accordingly, remand to Chief Judge Platt for resentencing.

The district court's computation of Jacobs' offense level followed a two-step analysis in which, (1) the court approximated that the Mickens conspiracy distributed in excess of fifty kilograms of cocaine, based on Mickens' unexplained income of over $2,000,000 during the operation of the conspiracy; and, (2) the court attributed the full approximated amount distributed by the conspiracy to Anthony Jacobs. This quantity was added to the 24.4 grams of cocaine that Jacobs admitted to selling, and resulted in an offense level of 36. Match-

ing Jacobs' Criminal History Category I with this offense level resulted in a sentence range of 262 to 327 months. The court sentenced Jacobs to the high end of that range.

 The district court's initial step in calculating Jacobs' sentence was proper, as the commentary to the Guidelines reveals:

> Where ... the amount [of drugs] seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records....

U.S.S.G. § 2D1.4, application note 2. In theory, the court's second step was also proper. Pursuant to Guidelines § 1B1.3, one convicted of a narcotics conspiracy may be sentenced on the basis of "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, application note 1; *see United States v. Schaper*, 903 F.2d 891, 897–99 (2d Cir.1990); *United States v. Candito*, 892 F.2d 182, 185 (2d Cir.1989). However, as applied to Jacobs, attribution of the full approximated amount of cocaine distributed by the Mickens conspiracy was improper. *See United States v. Cardenas*, 917 F.2d 683, 687 (2d Cir.1990). As Jacobs contends, such attribution

> unfairly [holds him] accountable for the narcotics equivalent of four years' worth of unreported income of another, whose funds may have been accumulated at any prior time, and may have come from any source—including Mickens' independent, personal transactions in the early 1980's ..., or some other narcotics conspiracy in which Mr. Jacobs played no part, or even from some altogether different activity such as gambling.

Absent reliable evidence connecting Jacobs to the quantity of narcotics extrapolated from Mickens' unreported income, Jacobs' 327–month sentence is unsupportable. Moreover, ascribing "managerial" status to Jacobs without conducting a hearing— something which the probation department

and prosecution originally agreed was necessary—was erroneous. *See United States v. Lanese*, 890 F.2d 1284, 1293 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990).

## VII. Bettina Jacobs Celifie's Sentence.

In sentencing defendant-appellant, cross-appellee Bettina Jacobs Celifie to a term of imprisonment of eighteen months, the district court downwardly departed twenty-three months from the applicable sentencing range. The government cross-appeals from that sentence, contending that the departure was improperly based on Celifie's acceptance of responsibility and on the request for leniency made by the jury in announcing its guilty verdict. We agree and remand to Chief Judge Platt for resentencing.

 A sentencing court may downwardly depart if it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (1988). Whether a particular factor is a permissible ground for departure is a legal issue, which we review *de novo. United States v. Joyner*, 924 F.2d 454, 459 (2d Cir.1991); *United States v. Barone*, 913 F.2d 46, 50 (2d Cir.1990). "Departure authority, though not designed to prevent a sentencing judge from exercising 'discretion, flexibility or independent judgment,' is nonetheless a device for implementing the guideline system, not a means of casting it aside." *United States v. Joyner*, at 460 (quoting *United States v. Lara*, 905 F.2d 599, 604 (2d Cir.1990)).

 In the present case, the district court apparently believed that the two-point reduction awarded for Celifie's acceptance of responsibility, U.S.S.G. § 3E1.1, did not adequately reflect the degree of her contrition. We do not foreclose the possibility that this rationale may, in an appropriate case, support a downward departure. However, in sentencing Celifie, the district court made no finding that the circumstances justified a departure for Ce-

lifie beyond the two-point reduction she received under the guidelines.

 Moreover, the court erred in relying on the jury's recommendation of leniency for Celifie as a basis for downward departure. Sentencing decisions are solely the province of the judge. *See United States v. Romo*, 914 F.2d 889, 895 (7th Cir.1990); *see also* United States Sentencing Commission, *Guidelines Manual*, Introduction (Nov. 1990) ("Pursuant to the [Sentencing Reform] Act, the *sentencing court* must select a sentence from within the guideline range.") (emphasis added). The jury's sympathy for Celifie may reflect circumstances that the court could appropriately consider in granting a downward departure. However, reliance on the jury's request for lenient sentencing treatment of Celifie, without more, is an insufficient basis to justify a downward departure.

## CONCLUSION

We have examined each of defendants-appellants' remaining arguments and find them to be without merit. In light of the foregoing, the district court's judgment is affirmed in part, reversed in part, and remanded to Chief Judge Platt.