12-1093-cr
United States v. Norris

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of March, two thousand thirteen.

PRESENT: RALPH K. WINTER,
DENNY CHIN,
CHRISTOPHER F. DRONEY,
Circuit Judges.

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
Appellee,

-v-                                    12-1093-cr

DAVID NORRIS,
Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:                RAJIT S. DOSANJH, Assistant United States Attorney (Brenda K. Sannes, Assistant United States Attorney), for Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York.

FOR DEFENDANT-APPELLANT:     CHRISTOPHER GADOURY (Joel M. Androphy, on the brief), Berg & Androphy, Houston, Texas.

Appeal from the United States District Court for the Northern District of New York (McAvoy, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant David Norris appeals from a judgment of conviction entered March 20, 2012, after a jury found him guilty of bank fraud, in violation of 18 U.S.C. § 1344(2). Norris was sentenced principally to three years' probation and a $25,000 fine. We assume the parties' familiarity with the facts, procedural history, and specification of issues for review.

Norris challenges the sufficiency of the evidence underlying his conviction. A criminal defendant raising such a challenge "bears a heavy burden." United States v. Coplan, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks and citation omitted). While we review such challenges de novo, we "view the evidence in the light most favorable to the government" and will affirm the conviction "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (internal quotation marks and citations omitted).

Norris primarily argues that there was no evidence that he personally made material misrepresentations to the bank. "The well established elements of the crime of bank fraud are that the defendant (1) engaged in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing property; and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss." United States v. Barrett, 178 F.3d 643, 647-48 (2d Cir. 1999); see 18 U.S.C. § 1344. A conviction under § 1344(2) requires proof of a

misrepresentation.  See United States v. Ragosta, 970 F.2d 1085, 1089 (2d Cir. 1992).

Norris's arguments that he did not personally make any misrepresentations ignore the fact that he was charged with aiding and abetting under 18 U.S.C. § 2.  "[A] defendant may be convicted of aiding and abetting a given crime where the government proves that the underlying crime was committed by a person other than the defendant, that the defendant knew of the crime, and that the defendant acted with the intent to contribute to the success of the underlying crime."  United States v. Hamilton, 334 F.3d 170, 180 (2d Cir. 2003).  At the very least, a rational jury could have concluded beyond a reasonable doubt that Norris aided and abetted Brian Barber in misrepresenting that he had personally invested $834,000 in equity capital in the target business when he had not actually invested anything.

First, it is clear that Barber's underlying misrepresentation about the equity contribution constituted bank fraud.  "[E]vidence beyond a reasonable doubt that defendants fraudulently evaded a known down payment requirement . . . is sufficient to support a bank fraud conviction."  United States v. Brandon, 17 F.3d 409, 426-27 (1st Cir. 1994).  Both the bank and the Small Business Administration required that Barber personally invest $834,000 in the business as a condition for the loan.  See United States v. Rigas, 490 F.3d 208, 235 (2d Cir. 2007) ("For those misstatements to be material, . . . they had to be capable of influencing a decision that the bank was able to make.").  To satisfy this condition at the closing, Barber presented, inter

alia, a cashier's check for $427,000 and a letter indicating he had deposited another $400,000 in an escrow account. A third-party affiliated with Norris, however, had actually deposited the $400,000 into the escrow account and, through a series of wire transfers, the same $400,000 was used to generate the cashier's check. This sum was returned to its source shortly after the closing.

Second, there was substantial evidence that Norris helped create this illusion that Brian Barber had made the equity contribution. Robert Barber, who was using his son Brian as a nominee to obtain the loan, testified that Norris took charge of obtaining the financing for the capital contribution. A handwritten fax from Norris indicated that he had taken care of the "down payment" condition for the loan. Joel Thomas testified that Norris played a role in procuring the fraudulent letter about the amount in escrow. The escrow agent testified that Norris was involved with all of the wire transfers in and out of the escrow account. Norris even told the SEC that he helped obtain a "bridge loan" for Brian Barber, which was allegedly repaid shortly after closing.

Finally, a jury could reasonably find that Norris had the specific intent to victimize the bank. Under our precedent, "[t]he government had to prove beyond a reasonable doubt that appellant intended to expose the bank[] to losses." United States v. Nkansah, 699 F.3d 743, 749 (2d Cir. 2012). Failing to make a down payment necessarily exposes a bank to a greater risk of loss, see, e.g., Brandon, 17 F.3d at 427 n.15 (explaining that

- 4 -

"[d]own payments on a loan decrease the risk of default or nonrepayment"), and Norris's assistance in avoiding that payment demonstrates his intent to deprive the bank of this security. Norris was motivated to sell the company to Robert Barber, even without obtaining the $834,000 difference in the sale price, because it was part of his plan to "pump" up the seller's stock price and then "dump" the stock. To cover up for the missing difference in the sale price, Norris not only orchestrated wire transfers to create the false appearance that Brian Barber had the $834,000 before the closing, but he also arranged for Brian to sign a phony promissory note after the closing to cover up the sham. Later, when the FBI began investigating the loan, Norris fabricated documents showing that the "bridge loan" was actually provided to Barber in lieu of amounts the seller allegedly owed his mother. From this evidence, the jury could conclude beyond a reasonable doubt that Norris knew and intended to expose the bank to a greater risk of loss by avoiding the equity contribution requirement.

Norris also argues that the district court erroneously admitted evidence of the "pump and dump" scheme, his cover-up of the fraud, and the distribution of the loan proceeds. We review evidentiary challenges for abuse of discretion. United States v. Quinones, 511 F.3d 289, 307 (2d Cir. 2007). We conclude this evidence was relevant and admissible for permissible purposes, such as to show motive, intent, consciousness of guilt, and falsity of the misrepresentations. See Fed. R. Evid. 404(b); United States v. Mickens, 926 F.2d 1323, 1329 (2d Cir. 1991); see

also <u>United States v. Adkinson</u>, 158 F.3d 1147, 1160 & n.23 (11th Cir. 1998) (noting that some "evidence that the loans proceeds were subsequently <u>diverted</u> might be relevant to show that the now-completed scheme was fraudulent," but that a "mountain of evidence . . . as to how the defendants <u>spent</u> their 'ill-gotten' gains" was not (emphasis added)).  Furthermore, the district court's conclusion that the risk of unfair prejudice did not substantially outweigh the evidence's probative value was not arbitrary and irrational.  <u>See</u> Fed. R. Evid. 403; <u>Quinones</u>, 511 F.3d at 307-08.

We have considered Norris's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk