*United States v. Htut*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand twenty-five.

PRESENT:
        DENNY CHIN,
        RICHARD J. SULLIVAN,
        MARIA ARAÚJO KAHN,
                *Circuit Judges*.

———————————————————————

UNITED STATES OF AMERICA,

            *Appellee*,

      v.                                No. 24-661

PHYO HEIN HTUT,

            *Defendant-Appellant.*

———————————————————————

| | |
|---|---|
| **For Defendant-Appellant:** | Daniel M. Perez, Law Offices of Daniel M. Perez, Newton, NJ. |
| **For Appellee:** | Jeffrey C. Coffman, Benjamin Klein, Daniel C. Richenthal, Nathan Rehn, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Nelson S. Román, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 5, 2024 judgment of the district court is **AFFIRMED**.

Phyo Hein Htut appeals from his conviction after a jury trial on one count of conspiring to assault a foreign official in violation of 18 U.S.C. § 371, for which he received a sentence of thirty months' imprisonment. In particular, the jury convicted Htut of plotting to harm Myanmar's Permanent Representative to the United Nations (the "Ambassador") as part of a scheme orchestrated by supporters of the military junta that overthrew Myanmar's democratically-elected government in February 2021. On appeal, Htut contends that prospective jurors made statements during *voir dire* that biased the entire jury pool (the "*venire*"). We

assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as needed to explain our decision.

"The process of empaneling a jury is firmly entrusted to the sound discretion of the trial judge and will not be disturbed absent an abuse of this discretion." *United States v. Morales*, 185 F.3d 74, 84 (2d Cir. 1999) (internal quotation marks omitted). We afford district courts such latitude because they are "best positioned to 'reach conclusions as to [the] impartiality and credibility [of jurors] by relying on [their] own evaluations of demeanor evidence and of responses to questions.'" *United States v. Nieves*, 58 F.4th 623, 631 (2d Cir. 2023) (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981)). "A district court abuses its discretion when its decision incorporates an error of law, rests on a clearly erroneous factual finding, or cannot be located within the range of permissible decisions." *Id.* at 632 (internal quotation marks omitted).

"[T]he *voir dire* process 'plays a critical function'" in protecting the Sixth Amendment right to an impartial jury. *Id.* at 631 (quoting *Rosales-Lopez*, 451 U.S. at 188). "To succeed on a constitutional challenge based on an error during *voir dire*, [the] appellant must show that his conviction was at the hands of a biased jury." *United States v. Perez*, 387 F.3d 201, 207 (2d Cir. 2004). But a jury is not biased

3

merely because it happens to have background knowledge of a case, and "[i]t is not required . . . that the jurors be totally ignorant of the facts and issues involved." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). In fact, even "preconceived notion[s] as to the guilt or innocence of an accused" will not, on their own, "rebut the presumption of a prospective juror's impartiality," as long as that juror can "lay aside his impression[s] or opinion[s] and render a verdict based on the evidence presented in court." *Id.* at 723.

Htut contends that separate statements made by three prospective jurors – none of whom ultimately served on the jury – unconstitutionally "tainted" the *voir dire* process and infected the *venire*. Htut Br. at 46.[1] We disagree.

First, Htut "particularly" emphasizes that Prospective Juror No. 24 commented that he had seen press coverage revealing that Htut's "co-defendants pleaded guilty." *Id.* But "publicity about a codefendant's guilty plea . . . does not ordinarily . . . warrant an automatic presumption of prejudice." *Skilling v. United States*, 561 U.S. 358, 385 (2010). Instead, Htut must show "the actual existence" of bias. *Irvin*, 366 U.S. at 723 (internal quotation marks omitted). Htut has not made

---

[1] Htut also points to "[a]dditional comments by prospective jurors at sidebars[.]" Htut Br. at 43. But none of these comments could have prejudiced Htut because these prospective jurors – who did not ultimately sit on the jury – made the allegedly compromising statements outside of the *venire*'s earshot.

4

that showing as to Prospective Juror No. 24, let alone the jurors who *were* ultimately selected and who merely heard this stray comment during *voir dire*. Furthermore, Htut premised his defense on the theory that there *was* a conspiracy and that Htut's co-defendants *were* guilty – but that Htut himself never intended to join that plot. In such circumstances, a prospective juror's isolated remark about the status of Htut's codefendants' guilty pleas did not corrupt the *venire*.

The same holds true for Prospective Juror No. 53's statements that he had "protested against the government" of Myanmar, and that he thus could not render an impartial verdict. Htut Br. at 40–41 (quoting App'x at 42). Htut argues that these comments "improperly plac[ed] extraneous evidence . . . in front of the jury panel that . . . the government of Myanmar was steeped in controversy." *Id.* at 41. But the mere knowledge of this controversy did not automatically prejudice the *venire* because "juror *impartiality* . . . does not require *ignorance*" of current events. *Skilling*, 561 U.S. at 381. And Prospective Juror No. 53 appears to have been biased in Htut's *favor*: he emphasized that his antipathy to the government of Myanmar might make him feel "overly sympathetic to the Defendant" – not to the government. App'x at 42.

Finally, Htut asserts that Prospective Juror No. 49 – who indicated that he had a friend who was "currently serving as an ambassador in central Asia" and who had "faced serious security threats" there – improperly informed the jury that "embassies in Asia face serious security threats."[2]  Htut Br. at 41 (quoting App'x at 85).  But once again, "[t]he Constitution does not require ignorant jurors, only impartial ones." *Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir. 1995).  The *venire*'s alleged awareness of potential ambassadorial risks at an embassy in Central Asia did not pollute the *voir dire* process – especially in a case involving a conspiracy to harm the United-States-based ambassador of an Eastern Asian country.

For these reasons, we conclude that the district court did not abuse its "ample discretion," *Nieves*, 58 F.4th at 632, by empaneling the jury despite several potential jurors' comments in front of the *venire*.  On the contrary, it diligently ensured the impartiality of the jury through repeated instructions and careful questioning.

---

[2] Htut mistakenly attributes these statements to Juror No. 59 in some places.

\* \* \*

We have considered Htut's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court.