UNITED STATES of America,

v.

Ronald E. FERGUSON, Christopher P. Garand, Robert D. Graham, Christian M. Milton, and Elizabeth A. Monrad.

Criminal No. 3:06CR137 (CFD).

United States District Court, D. Connecticut.

Oct. 30, 2007.

Eric J. Glover, Assistant U.S. Attorney, District of Connecticut, New Haven, CT, Raymond E. Patricco, Jr., Assistant U.S. Attorney, Eastern District of Virginia, Alexandria, VA, Adam Safwat, Trial Attorney, U.S. Dept. of Justice, Criminal Division, Fraud Section, Washington, DC, Paul E. Pelletier, Principal Deputy Chief, U.S. Dept. of Justice, Criminal Division, Fraud Section, Washington, DC, for United States.

Alan M. Vinegrad, Douglas B. Bloom, Olivia A. Radin, Pamela A. Carter, Covington & Burling LLP-NY, Frederick P. Hafetz, Michael S. Chernis, Susan R. Necheles, Tracy E. Sivitz, Hafetz & Necheles, Richard L. Spinogatti, Robert J. Cleary, Proskauer Rose, New York, NY, Hope Ivy Hamilton, Covington & Burling, LLP-DC, Peter H. White, Jonathan E. Rich, Mayer Brown LLP, Brian M. Heberlig, Bruce C. Bishop, David M. Fragale, Eduardo L. Crosa, Erik L. Kitchen, Reid H. Weingarten, Steptoe & Johnson, Thomas Abbenante, Washington, DC, William F. Dow, III, Jacobs, Grudberg, Belt, Dow & Katz, P.C., Richard A. Reeve, George Gust Kouros, Sheehan & Reeve, Jonathan J. Einhorn, New Haven, CT, Anthony Pacheco, Keith L. Butler, Proskauer Rose LLP, Los Angeles, CA, Richard R. Brown, Brown, Paindiris & Scott, Hartford, CT, for Ronald E. Ferguson, Christopher P. Garand, Robert D. Graham, Christian M. Milton, and Elizabeth A. Monrad.

### RULING ON MOTIONS IN LIMINE AND MOTIONS TO SEVER

CHRISTOPHER F. DRONEY, District Judge.

The government and defendants Ferguson, Garand, Graham, Monrad, and Milton filed eighteen motions in limine in accordance with the Court's pre-trial scheduling orders. These defendants have also joined in many of their co-defendants' motions. The Court now addresses the defendants' motion to exclude the government's Fed.R.Evid. 404(b) ("Rule 404(b)" or "404(b)") evidence, their motion to exclude evidence of recorded conversations, Milton, Monrad, and Ferguson's motions to sever either defendant Garand or themselves, Graham's motion to sever, and Garand's motion to sever. For the following reasons, the Court grants in part and denies in part the defendants' motion to exclude the government's Fed.R.Evid. 404(b) evidence and their motion to exclude evidence of recorded conversations, and the Court denies the defendants' severance motions.

### I. Motion to Exclude the Government's Rule 404(b) Evidence

The government provided the defendants with notice of five reinsurance transactions it might seek to introduce as Rule 404(b) evidence at trial. The defendants seek to preclude the government from introducing evidence concerning these transactions. Two of these transactions ("the Schedule A transactions") were included in the set of six reinsurance transactions purportedly ceded by Cologne Re Dublin ("CRD") to National Union Fire Insurance Co. ("NUFIC") under the two contracts between these companies that comprised the loss portfolio transfer ("LPT") at issue in this case. The other three transactions ("non-Schedule A transactions") are allegedly fraudulent or deceptive transactions with which defendants Garand and Ferguson were allegedly involved. Other than a possible connection to Garand and Ferguson, the three non-Schedule A transactions are entirely unrelated to the LPT. The defendants challenge the admission of the Sched-

ule A and the non-Schedule A transactions for different reasons.

## A. The Schedule A Transactions

The government alleges that the LPT was a sham because it did not transfer any risk from CRD to NUFIC. The government seeks to prove this by introducing evidence that two of the transactions included in the LPT that, on paper, appeared to cede risk from CRD to NUFIC, were in fact already reinsured, and so they did not actually transfer this risk. These two transactions are the "Schedule A" transactions that are the subject of this motion. Although the defendants concede that the fact that these Schedule A transactions were already reinsured is relevant and admissible evidence of fraud, the defendants seek to preclude the government from introducing any additional evidence concerning the details of the deals underlying the transactions.

Each of the Schedule A transactions at issue here is comprised of a set of reinsurance deals with which CRD was involved several years prior to the LPT. The first set, between CRD, Coral Re Reinsurance Co. ("Coral Re"), which is an AIG-related entity in Barbados, and Astral Reinsurance Company, Ltd., ("Astral") which is an AIG-related entity in Bermuda, is comprised of two allegedly fraudulent reinsurance transactions structured similarly to the LPT at issue in this case.[1] The second set is a series of transactions involving CRD, General Cologne Re Australia ("GCRA"), Cologne Re Australia ("CRAUS"), Zurich, and its parent, Zurich Australia. The government alleges that this series of transactions was deceptive because, among other reasons, it enabled Zurich Australia's parent company to infuse Zurich Australia with regulatory capital without disclosing the source of the capital to Australian regulators. As mentioned above, and most significantly for purposes of this case, both of these Schedule A transactions were already reinsured prior to their inclusion in the LPT,

so it was impossible for NUFIC to assume any risk from their transfer from CRD.

■■■ Federal Rule of Evidence 404(b) permits the use of "[e]vidence of other crimes, wrongs, or acts . . . [to prove] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Evidence offered under this rule should be analyzed "under an 'inclusionary approach,'" and district courts should "allow[ ] [such] evidence 'for any purpose other than to show a defendant's criminal propensity.'" *United States v. Lombardozzi*, 491 F.3d 61, 78 (2d Cir.2007) (quoting *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir.2002)). Factors courts should consider when assessing the admissibility of evidence under Rule 404(b) include (1) whether the evidence is offered for a proper purpose within the Rule, (2) whether "the evidence [is] relevant to a disputed issue; (3) [whether] the probative value of the prior act evidence substantially outweigh[s] the danger of its unfair prejudice;" and (4) whether a limiting instruction would be appropriate. *Id.* (quoting *Garcia*, 291 F.3d at 136). District courts are granted broad discretion to admit prior bad act evidence, and a decision to admit such evidence will be reversed only if it was "arbitrary and irrational." *Id.* at 79.

■■■ At the same time, evidence that is "'inextricably intertwined with the evidence regarding the charged offense, or [that is] necessary to complete the story of the crime on trial'" is not prior bad acts evidence that must be analyzed under Rule 404(b). *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir.2000)). Regardless of Rule 404(b), "'evidence that does not directly establish an element of the offense charged [is admissible] in order to provide background for the events involved in the case.'" *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir.1994) (quoting *United States v. Skowron-*

---

1. The government claims that these transactions were fraudulent because AIG paid CRD to undertake sham reinsurance transactions with AIG-related entities for which CRD incurred no risk. The transactions allegedly allowed AIG to manipulate the liabilities on its balance sheet by artifi-

cially reducing AIG's loss reserves. The government further alleges that, as with the LPT, the only financial benefit to CRD from the transactions was a fee AIG paid CRD for agreeing to participate in a transaction CRD otherwise would have no reason to undertake.

*ski,* 968 F.2d 242, 246 (2d Cir.1992)). "In particular, evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense." *Id.*

The government argues that evidence of the individual contracts underlying the two reinsured Schedule A transactions is admissible because it is inextricably intertwined with the government's proof that the LPT was a sham. Specifically, the government argues that evidence that the defendants knew of the fraudulent or deceptive nature of the underlying transactions is directly linked to the defendants' state of mind when they included these reinsured transactions in the LPT, and their knowledge that the LPT would be a sham. This evidence, the government asserts, will provide necessary background information and complete the story of the charged crime for the jury. The defendants argue that even if evidence that the Schedule A transactions were reinsured were admissible under the government's theory, additional evidence of the underlying contracts is irrelevant to the charged crimes. To the extent that the government seeks to introduce evidence that the deals that comprise the Schedule A transactions were fraudulent or deceptive, the defendants argue, the evidence is inadmissible under Rule 404(b). Alternatively, the defendants argue that this evidence would prolong and unduly complicate an already complex case, and create a trial within a trial concerning the fraudulent or deceptive nature of the deals.

▬ The Court finds that evidence that the Schedule A transactions were already reinsured prior to their inclusion in the LPT is inextricably linked to the fraud charged in the superseding indictment, and so it is admissible as direct evidence of the alleged fraud. The Court concludes, however, that evidence of the deals underlying the Schedule A transactions is not similarly admissible. It is undisputed that the Schedule A transactions were not undertaken in furtherance of the charged conspiracy here. Rather, they are separate, discrete incidents of alleged fraud or deceit. Although the government's evidence indicates that the defendants'

knowledge of the fraudulent nature of the Schedule A transactions induced the defendants to include these transactions in the LPT and informed their understanding of why the LPT did not transfer any risk to NUFIC, the allegedly fraudulent details of the deals underlying the Schedule A transactions are not necessary to demonstrate that the LPT was a fraud. *See United States v. Mahaffy,* 477 F.Supp.2d 560, 566 (E.D.N.Y. 2007) (holding prior acts evidence concerning similar prior financial crime was not inextricably linked to the charged crime where the prior act "was a separate, discrete offense that may be conceptually segregated from the charged offenses without impairing the jury's ability to understand the facts underlying the schemes alleged in the indictment"). Because of this, "although the proffered evidence is 'certainly relevant to show the background of the charged conspiracy, it does not appear to be inexorably intertwined.'" *United States v. Townsend,* No. S106CR34, 2007 WL 1288597, at *2 (S.D.N.Y. May 1, 2007) (quoting *United States v. Nektalov,* 325 F.Supp.2d 367, 370 (S.D.N.Y.2004)); *United States v. Newton,* No. S101CR635, 2002 WL 230964, at *3 (S.D.N.Y. Feb.14, 2002) (holding evidence was not inextricably intertwined to charged crimes where evidence "[was] certainly not crucial information without which the jury will be confused or the government's theory of the case unfairly curtailed"). Accordingly, the evidence may only be admitted if it satisfies the requirements of Rule 404(b). *Nektalov,* 325 F.Supp.2d at 372 ("Where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)."); *see Mahaffy,* 477 F.Supp.2d at 566 (reaching same conclusion); *United States v. Dolney,* No. 04–CR–159, 2005 WL 2129169, at *2 (E.D.N.Y. Sept. 1, 2005) (analyzing evidence of uncharged stock fraud conspiracy under Rule 404(b) where the evidence "provide[d] relevant background to the charged conduct but … [was] not so tightly connected to the alleged conspiracy … that it clearly represent[ed] intrinsic evidence").

As mentioned above, evidence is admissible under Rule 404(b) if it is "(1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial." *Dol-*

ney, 2005 WL 2129169, at *3 (citing *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002)). The evidence is not admissible if it is irrelevant under Rule 402 or unduly prejudicial under Rule 403. *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir.1996). The Court agrees with the government that evidence concerning the fraudulent or deceptive nature of the deals underlying the Schedule A transactions, and the defendants' familiarity with these deals, is relevant to the defendants' knowledge and intent to participate in the charged conspiracy. However, the Court ultimately concludes that this evidence is inadmissible under Rule 403.

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time." Fed. R.Evid. 403. Here, evidence that the defendants knew that the Schedule A transactions were already reinsured prior to their inclusion in the LPT is highly probative of the defendants' knowledge and intent to craft the LPT to be a sham. The government's additional evidence that the Schedule A transactions could not possibly transfer risk because the transactions were fraudulent, and that the defendants' knew of the details of these transactions, further confirms the defendants' knowledge and intent to participate in the charged fraud. However, this additional evidence is far less probative of the defendants' knowledge and intent in light of the admissible evidence already available. At the same time, this additional evidence would risk diverting the jury's attention to the collateral question of whether the Schedule A transactions were in fact fraudulent, and it risks creating a trial within a trial on this issue. Evidence of AIG's prior involvement with another possibly fraudulent transaction (Coral Re) would also be unduly prejudicial to defendant Milton, the only defendant affiliated with AIG. Given these risks, and the marginal probative value of the additional evidence, the Court concludes that the evidence is inadmissible under Rule 403. *See United States v. Aboumoussallem*, 726 F.2d 906, 912–13 (2d Cir.1984) (affirming exclusion of otherwise relevant similar act evidence under Rule 403 on the ground that confusion and delay caused by likely trial within a trial would have substantially outweighed probative value of evidence); *see also Ricketts v. City of Hartford*, 74 F.3d 1397, 1414 (2d Cir.1996) (upholding exclusion of prior act evidence because of risk of unnecessary trial within a trial and citing *Aboumoussallem*). Accordingly, the government may present evidence concerning the Schedule A transactions only to the extent that it shows the Schedule A transactions were reinsured prior to their inclusion in the LPT and that the defendants knew this at the time of their participation in the LPT.

### B. The Non–Schedule A Transactions

The government also included three non-Schedule A transactions in its Rule 404(b) notice. The government asserts that it will only introduce evidence of these transactions if the defendants "open the door" to them, either through the cross-examination of government witnesses or during the defense case. Specifically, the government intends to use evidence of these transactions "to rebut any potentially incomplete, misleading, or confusing defenses advanced by the defendants," such as the use of these transactions to discredit John Houldsworth during cross-examination without mentioning the defendants' roles in the transactions. The defendants' motion seeks to narrow the government's definition of "opening the door" to the use of this evidence. The defendants also raise the concern that some of the defendants could be unduly prejudiced by the introduction of this evidence in the event that a co-defendant who does not risk prejudice from the evidence "opens the door."

Since the defendants made this motion well in advance of trial, the Court does not currently have the necessary factual context to determine whether certain testimony will properly open the door to the use of this evidence. *United States v. Van Putten*, No. 04CR803, 2005 WL 612723, at *3 (S.D.N.Y. Mar. 15, 2005) ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context."). Because of this, the Court denies the defendants' motion without prejudice to its being reasserted at trial.

## II. Motion to Exclude Evidence of Recorded Conversations

The defendants move to preclude the government from introducing into evidence certain portions of recorded conversations that took place among the defendants, certain co-conspirators, and other CRD employees. The defendants challenge these conversations as inadmissible hearsay, irrelevant, and unduly prejudicial. For the following reasons, the defendants' motion is granted in part and denied in part.

### A. Applicable Law

#### 1. Relevancy under Fed.R.Evid. 401 and 402

■■■■ "As a general matter, all relevant evidence is admissible under the Federal Rules of Evidence unless specifically excluded." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir.2004) (citing Fed.R.Evid. 402). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. This standard should be interpreted liberally. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("Rule[ ] [401's] basic standard of relevance thus is a liberal one."). District courts have broad discretion to assess whether evidence is relevant. *Perez*, 387 F.3d at 209. A district court's relevancy determination will not be overturned unless it is arbitrary or irrational. *Id.* ("District courts have broad discretion to assess the relevancy of evidence and we will not overturn that determination unless it is arbitrary or irrational.").

#### 2. Exclusion of Relevant Evidence under Fed.R.Evid. 403

■■■■ Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," among other limited reasons. Fed. R.Evid. 403. For purposes of Rule 403, " '[e]vidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence.' " *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir.2006) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir.1980)); *see Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."). Such prejudice " 'may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant.' " *Quattrone*, 441 F.3d at 186 (quoting *Figueroa*, 618 F.2d at 943). To justify excluding evidence under the Rule, "the prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *Id.* Further, any unfair prejudice must substantially outweigh the evidence's probative value. *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir.1997) ("As the terms of the Rule indicate, for relevant evidence to be excluded on this basis, the imbalance must be substantial, and the prejudice must be unfair."). Since the Rule governs the exclusion of relevant, probative evidence, prohibiting the use of evidence on this basis "is an extraordinary remedy that must be used sparingly." *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir.1990) (citation omitted). District courts analyzing evidence under Rule 403 should consider whether a limiting instruction will reduce the unduly prejudicial effect of the evidence so that it may be admitted. *Cf. United States v. Paulino*, 445 F.3d 211, 223 (2d Cir.2006) ("[T]o the extent there was any risk of unfair prejudice, the district court satisfactorily reduced that possibility with a thorough and carefully worded limiting instruction."); *see also United States v. Downing*, 297 F.3d 52, 59 (2d Cir.2002) (noting presumption that "juries understand and abide by a district court's limiting instructions" "[a]bsent evidence to the contrary").

#### 3. Admissibility of Co–Conspirators' Statements under Fed.R.Evid. 801(d)(2)(E)

■■■■ The Federal Rules of Evidence provide for the admissibility of statements

made by criminal co-conspirators "during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). "In order to admit a statement under this Rule, the court must find (1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Tracy,* 12 F.3d 1186, 1196 (2d Cir.1993) (citing *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). "Statements in furtherance of a conspiracy 'prompt the listener ... to respond in a way that promotes or facilitates the carrying out of a criminal activity.'" *United States v. Desena,* 260 F.3d 150, 158 (2d Cir.2001) (quoting *United States v. Maldonado–Rivera,* 922 F.2d 934, 958 (2d Cir.1990)). "While statements that are merely idle chatter or that are entirely retrospective are not in furtherance of the conspiracy, statements relating past events meet the in-furtherance test if they serve some current purpose in the conspiracy." *United States v. Thai,* 29 F.3d 785, 813 (2d Cir.1994) (internal citation and quotation marks omitted). Co-conspirator statements are also admissible under the Rule "if they provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." *Desena,* 260 F.3d at 158 (internal quotation marks omitted). A district court's decision to admit coconspirators' statements under Rule 801(d)(2)(E) will be upheld unless clearly erroneous. *Thai,* 29 F.3d at 814.

#### 4. Admissibility of Statements by a Party–Opponent under Fed.R.Evid. 801(d)(2)(A)

■ The Federal Rules of Evidence classify statements made by a criminal defendant to be non-hearsay if the statements are offered against the defendant. Fed.R.Evid. 801(d)(2)(A). The Rule provides that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... the party's own statement." *Id.* Because such "party admissions" are non-hearsay, they may be admitted for their truth. *United States v. Russo,* 302 F.3d 37, 43 (2d Cir.2002) ("Statements made by the defendant may be introduced by the government in a criminal trial to prove the truth of the facts stated in them because they are admissions of an adverse party." (citing Fed.R.Evid. 801(d)(2)(A))). "Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule." Fed.R.Evid. 801(d)(2)(A), Advisory Committee Notes (1972).

### B. Discussion[2]

#### 1. Government Exhibit 153

Government exhibit 153 is a transcript of a December 28, 2000 conversation between John Houldsworth ("Houldsworth")[3] and defendant Garand. The defendants object to an excerpt of the exhibit, from page 6 line 25 to page 8 line 27, on the ground that it is inadmissible under Rule 403. They argue that this excerpt is unduly prejudicial because it suggests that AIG routinely engages in accounting fraud by "cooking" its books and that AIG has asked Gen Re for help in doing this on numerous occasions. The government argues that these statements are admissible as non-hearsay statements made in furtherance of the conspiracy, and that they are highly probative of the co-conspirators' state of mind by showing that they understood, as they worked on the LPT, that AIG would not account for it properly.

---

**2.** The following discussion is conditioned on the assumption that the government will establish the charged conspiracy and the defendants' and co-conspirators' participation in it by a preponderance of the evidence. *See Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

**3.** The superseding indictment identifies Houldsworth as a co-conspirator. He already pled guilty to conspiracy to commit securities fraud in connection with the LPT, and he will testify for the government at trial.

As an initial matter, the Court notes that there are two bases for classifying the excerpt as non-hearsay. First, the entire excerpt is non-hearsay as statements made in furtherance of the conspiracy under Rule 801(d)(2)(E). Through this conversation, Garand "provid[ed] reassurance to a coconspirator" to continue working on the LPT. *See Thai*, 29 F.3d at 813. Thus, the excerpt is admissible as substantive evidence so long as it is not unduly prejudicial. Second, Rule 801(d)(2)(A) also provides an alternative basis for the admissibility of Garand's statements to prove his knowledge and state of mind concerning the LPT.[4] These statements are admissible against Garand, then, unless their probative value for this purpose is substantially outweighed by the risk of undue prejudice under Rule 403.

■ The Court finds that part of the excerpt objected to by the defendants is fully admissible for its truth, but some of it must be excluded as unduly prejudicial under Rule 403. Specifically, the Court excludes the portion of the transcript on page 6, lines 31–33; the portion from page 6, line 38 through page 7, line 34; and the portion on page 8, lines 7 (after Garand's comment "[y]eah") through 27.[5] During these excerpts, Houldsworth and Garand speculate as to the extent of AIG's efforts to manipulate its financial statements, and they discuss several possibly fraudulent transactions that AIG used to accomplish this goal over a period of several years. All of the transactions they mention, with one exception,[6] are seemingly unrelated to the LPT. Despite the fact that the statements are in furtherance of the conspiracy, to the extent that they speculate about the full extent of fraud at AIG they are not probative to show that the LPT was fraudulent, and they are also not probative of Garand's state of mind concerning the LPT. At the same time, to the extent that these segments discuss other deceptive or possibly fraudulent transactions undertaken by AIG, they are highly prejudicial to Milton, the only defendant affiliated with AIG, because they imply that AIG has engaged in accounting fraud frequently over a long period of time. To prevent the risk that Milton will be unduly prejudiced through guilt by association with AIG, this evidence shall be excluded.

■ The Court will allow the government to use the following portions of exhibit 153 to which the defendants object: page 6, lines 25–30; page 6, lines 34–37; and page 7, line 35 through page 8, line 7 (only through Garand's comment "[y]eah"). However, the Court finds that Rule 403 prevents their use as co-conspirators' statements under Rule 801(d)(2)(E); instead, these excerpts may only be used as party admissions against Garand under Rule 801(d)(2)(A). In these excerpts, Houldsworth and Garand are discussing their beliefs concerning AIG's approach to its accounting. These excerpts show that both men believe that AIG will "do whatever they need to make their numbers look right." These statements create a high risk of undue prejudice for Milton that significantly outweighs the low probative value of the statements as substantive evidence of the charged conspiracy—regardless of the fact that the statements were made in furtherance of it. By contrast, however, this risk of prejudice does not outweigh these statements' considerable probative value in providing a unique insight into these conspirators' knowledge and intent as they worked on the LPT. In light of this, these excerpts may be used as non-hearsay evidence of Garand's state of mind under Rule 801(d)(2)(A). Should the government use these excerpts at trial, to protect Milton from undue prejudice the Court will instruct the jury not to consid-

4. The Court notes that under this theory of admissibility, Houldsworth's statements would only be admissible to provide context for Garand's statements and could not be considered for their truth; a limiting instruction could ensure that the jury considers Houldsworth's statements only for this limited purpose.

5. A copy of the excerpt redacted in accordance with this opinion is attached as exhibit A.

6. At page 6 lines 31–33, Houldsworth and Garand discuss the Coral Re transaction, which the Court already addressed in the context of the defendants' Rule 404(b) motion. The Court excluded evidence concerning the fraudulent nature of the deals underlying this transaction pursuant to Rule 403. In line with that decision, the Court similarly excludes the coconspirators' statements here that suggest the transaction was fraudulent.

er the statements for any other purpose, if requested by Milton.

### 2. Government Exhibit 201

■ The defendants object to a portion[7] of a March 7, 2001 conversation between Houldsworth and defendant Graham in which Graham states that AIG's "organizational approach to compliance issues has always been pay the speeding ticket ... which is very different than our organizational approach to compliance issues." The government argues that Graham's statement is admissible as a co-conspirator's statement in furtherance of the conspiracy under Rule 801(d)(2)(E) because Graham's comment "provide[s] reassurance" to Houldsworth to work on the LPT, *Desena*, 260 F.3d at 158, or, alternatively, that it is admissible as a statement of a party opponent under Rule 801(d)(2)(A), and that the significant probative value of the evidence is not substantially outweighed by the risk of prejudice to any defendant. The defendants argue that Graham's comments suggest AIG has a reputation for breaking the law, and so it must be excluded as unduly prejudicial to defendant Milton.

The Court agrees with the government that Graham's statements are admissible under Rule 801(d)(2)(E) because they furthered the conspiracy by providing Houldsworth with reassurance that only AIG, not Gen Re, would be acting illegally by completing the LPT. The Court concludes, however, that the risk of undue prejudice to Milton requires limiting the use of this evidence to showing Graham's state of mind. Graham's knowledge of AIG's reputation has low probative value as substantive evidence of whether the LPT was fraudulent, but admitting his comments for their truth would create a serious risk of prejudice to Milton by suggesting that AIG breaks the law indiscriminately and frequently. Rather, the comment is most probative of Graham's state of mind as he worked on the LPT, and limiting the use of the evidence to this purpose would significantly reduce the risk of undue prejudice to Milton. Rule 801(d)(2)(A) provides a basis for admitting the statement for this purpose.[8] In light of this, the Court will permit this evidence, but will give the jury a limiting instruction that it may consider the evidence only with respect to Graham's state of mind, and not for any other purpose.[9]

### 3. Government Exhibit 67

■ The defendants seek to exclude a portion of a November 14, 2000 conversation[10] between Houldsworth and defendant Monrad in which Houldsworth tells Monrad "if there's enough pressure on at [AIG's] end, they'll find ways to cook the books, won't they" and "[w]e won't help them do that too much.... [W]e'll do nothing illegal," to which Monrad replies "[r]ight." The defendants again argue that the statements' implication that AIG is willing to commit fraud will unduly prejudice Milton. The Court finds that these statements are admissible as coconspirator's statements in furtherance of the conspiracy under Rule 801(d)(2)(E), but concludes, for the same reasons identified for government exhibit 201, that the evidence may be used only to show Monrad's state of mind: the risk of undue prejudice to Milton from substantive evidence of AIG's other possibly fraudulent activities requires limiting the jury's use of this evidence only to assess Monrad's state of mind. The statements are admissible for this purpose under Rule 801(d)(2)(A).[11] Therefore, the Court

---

7. The defendants object to page 6, lines 4–12.

8. Houldsworth's statements are only admissible to provide context for Graham's statements and may not be considered for their truth. *See supra* note 4.

9. Since the Court's other evidentiary rulings will prevent the jury from considering any substantive evidence concerning AIG's possible misconduct in unrelated transactions, the jury will have no evidence from which to conclude that AIG was involved in any fraud beyond the LPT. In light of this, there is little risk that the jury will

be unable to comply with a limiting instruction prohibiting it from using this evidence for purposes beyond assessing the declarant's state of mind. Since these evidentiary rulings will, in concert, protect Milton from undue prejudice solely through his affiliation with AIG, Graham's comment is admissible for the more limited purpose of showing his state of mind.

10. The defendants object to page 3, lines 15–24.

11. Houldsworth's statements are only admissible to provide context for Monrad's statements and

will permit this evidence but will instruct the jury to use it only for this more limited purpose.

### 4. Government Exhibit 71

■ The defendants object to two portions of government exhibit 71, a transcript of a November 15, 2000 taped conversation between Monrad, Houldsworth, Richard Napier, and James Sabella. Their first objection is to one line of the exhibit [12] in which Monrad, responding to a question from Houldsworth inquiring as to how AIG would report the LPT for tax purposes, stated "I'm not sure they [AIG] use all the same rules we use." The defendants argue that the comment is too prejudicial to Milton because it implies that AIG commits fraud. Monrad's statement is admissible as a party admission under Rule 801(d)(2)(A), and it is highly probative of Monrad's understanding that AIG planned to account for the LPT differently from Gen Re. Monrad's understanding of how AIG expected to use the LPT is crucial to the criminal conspiracy charge against her. To avoid undue prejudice to Milton, the Court will give the jury a limiting instruction emphasizing that the evidence may be used only to assess Monrad's state of mind; the Court finds good reason to believe this instruction will be effective in light of the Court's other evidentiary rulings that limit the jury's exposure to substantive evidence of AIG's involvement with other possibly fraudulent transactions.

■ The defendants also object to Houldsworth's and Napier's sarcastic comments, later in the conversation, that their counterparts at AIG were "lovely people," [13] and that defendant Garand had good reason to avoid conducting business with them. The defendants argue that the comments would unduly prejudice Milton by implying that AIG is a bad company. From the context, the sarcastic nature of their comments calling their AIG counterparts "nice people" and "lovely people" is apparent. The Court agrees that this excerpt of the conversation is inadmissible. As a preliminary matter, there is little support to justify characterizing these comments as non-hearsay statements made in furtherance of the conspiracy. Further, under Rule 403, the comments are too general to be probative of any particular fact at issue in this case, and their admission at trial would risk unduly prejudicing Milton by implying that AIG employees were bad people and that good reason existed to avoid working with them. Accordingly, this portion of the exhibit must be redacted.

### 5. Government Exhibit 76

■ The defendants object to two excerpts of government exhibit 76, a conversation between Houldsworth and unindicted coconspirator Milan Vukelic ("Vukelic") [14] on November 16, 2000, on the ground that it is unduly prejudicial to Milton. In the first excerpt,[15] Houldsworth speculates that AIG could decide to account for the LPT through an offshore subsidiary to avoid regulatory scrutiny, and he mentions the Coral Re deal as an example of how AIG is "clearly a lot more aggressive and a lot more creative in how they deal with their group issues than we would be." [16] Although the statement is non-hearsay under Rule 801(d)(2)(E) because Houldsworth is explaining the LPT to Vukelic, his superior at CRD, in furtherance of the conspiracy, the Court agrees with the defendants that this excerpt is inadmissible as unduly prejudicial to defendant Milton. The probative value of Houldsworth's statement is low for two reasons. First, it constitutes

may not be considered for their truth. *See supra* note 4.

12. The defendants object to line 28 on page 2 of the transcript.

13. The defendants object to the statements at page 42, lines 19–27.

14. Vukelic was Houldsworth's superior at CRD, and he is one of the unindicted coconspirators identified in the superseding indictment.

15. The defendants object to the excerpt on page 7 lines 9–22.

16. The defendants also objected to this excerpt because Houldsworth stated that AIG "may have all sorts of little wheezes going, which, in fact, mean they don't pay tax." The government agreed to exclude this statement from the exhibit.

mere speculation by Houldsworth as to the manner in which AIG will account for the LPT. Second, although it is probative of Houldsworth's state of mind, his state of mind will not be a disputed issue at trial because he already pled guilty to conspiracy to commit securities fraud. At the same time, the evidence is highly prejudicial to Milton because it implies that AIG does not pay taxes and improperly manipulates its financial statements with regularity. Since the prejudice to Milton from this excerpt substantially outweighs its probative value, the government must redact this excerpt from the exhibit.

■ In the second excerpt,[17] Vukelic and Houldsworth are discussing the fact that in the third quarter of 2000 AIG used loss reserves to pay for other liabilities. The defendants object to the statements on the ground that they imply that AIG was fraudulently manipulating its accounting prior to the LPT, and that this implication would unduly prejudice Milton. The Court finds that the statements are admissible under Rule 801(d)(2)(E) and are not precluded by Rule 403's balancing test. The statements are in furtherance of the conspiracy because Houldsworth is explaining the LPT to Vukelic and answering Vukelic's questions about how the transaction will work. With regard to Rule 403, the statements do not imply that AIG did anything fraudulent in the third quarter, but rather provide an explanation of AIG's possible motive in undertaking the LPT. Because the statements are highly probative evidence of the co-conspirators' understanding of AIG's possible motive for participating in the LPT, while they present no risk of undue prejudice to Milton as evidence of prior fraud by AIG, they are admissible.

### 6. Government Exhibit 64

■ The defendants object to two portions of government exhibit 64, the transcript

of a November 14, 2000 conversation between Houldsworth and Vukelic. In the first, Houldsworth discusses the fact that, in the third quarter of 2000, prior to the LPT, AIG had "taken down" loss reserves to balance out other liabilities, and that AIG was looking to boost loss reserves in the fourth quarter to compensate for this on its year-end financial statements.[18] This statement was in furtherance of the conspiracy because Houldsworth was explaining to Vukelic why AIG wanted the LPT. The defendants argue, however, that Houldsworth's statement implies that this constituted improper accounting, and that the statement would therefore unduly prejudice Milton. The Court disagrees with the defendants' view of this statement. Although Houldsworth states that the financial press has reported on "people taking down reserves when they shouldn't be," this statement does not necessarily mean that AIG's third quarter use of the loss reserves or fourth quarter focus on boosting loss reserves was improper. Instead, Houldsworth provides an explanation for AIG's motive in seeking to boost loss reserves, including through the LPT. This evidence is highly probative both as background and as evidence of AIG's possible motives to commit fraud; as there is no risk of undue prejudice to Milton because Houldsworth does not actually claim that AIG's third quarter actions were improper, this statement is admissible.[19]

■ The defendants also object to the admission of one of Vukelic's statements concerning the potential structure of the LPT, in which he states that "Ferguson doesn't like it because it's AIG." [20] The defendants argue that this is unduly prejudicial to both Milton and Ferguson. Although the comment is non-hearsay under Rule 801(d)(2)(E) because it was made as Vukelic and Houldsworth

---

17. The defendants object to the statements made on page 9 at lines 31–34.

18. The defendants object to Houldsworth's statements from page 12 line 36 through page 13 line 11.

19. The defendants do not challenge the admissibility of this evidence under Rule 801(d)(2)(E), and the Court agrees that the statement is non-

hearsay under this rule. Should the defendants request it, the Court will instruct the jury to consider Houldsworth's description of the news articles only with regard to AIG's subsequent motive to commit fraud and not for the truth of the facts reported in them.

20. The statement is on page 15 at lines 22–24.

discussed the structure of the LPT, the Court agrees that Vukelic's comment is inadmissible under Rule 403. The statement's precise meaning is ambiguous and it is too general to be of significant probative value of any fact at issue in this case. Further, the statement risks unduly prejudicing Milton because it seems to imply that, for an unspecified reason, Ferguson finds dealing with AIG distasteful. The government must redact Vukelic's comment from the exhibit.

### 7. Government Exhibit 66

■ The defendants object to a portion of a November 14, 2000 conversation between Houldsworth and Garand.[21] Specifically, the defendants seek to exclude Houldsworth's statements to Garand in which he recounts his understanding of what the LPT is and why AIG and Gen Re sought to undertake it. In doing this, Houldsworth explains that he learned of the LPT from Monrad, who told him that Hank Greenberg had initiated the LPT because AIG "just want[ed] to be able to book 500 million of reserves" on its year-end financial statement to avoid negative "stock market reaction or analyst reaction" to AIG's third quarter usage of loss reserves. The defendants argue that Houldsworth's statement is inadmissible hearsay that would be unduly prejudicial to Milton because it implies that AIG improperly manipulated its books in the third quarter of 2000 and sought to use the LPT to compensate for doing so.

The Court finds that Houldsworth's statement is admissible as a statement made in furtherance of the conspiracy under Rule 801(d)(2)(E). In this passage, Houldsworth is explaining where the idea for the LPT came from and AIG's motives in initiating it. This evidence is highly probative of AIG's motives and Garand's knowledge of these motives at the beginning stages of the transaction. The Court finds that Houldsworth's uncertainty concerning the details of the proposed transaction does not render his explanation of it unreliable to the point that it should not be considered for its truth; the admissibility of statements in furtherance of a conspiracy is not dependent on personal knowledge. Fed.R.Evid. 801(d)(2), Advisory Committee Notes (1972) ("No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of truthworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge ... calls for generous treatment of this avenue to admissibility."); see United States v. Lindemann, 85 F.3d 1232, 1238–39 (7th Cir.1996) ("[E]very court that has addressed the issue has held that coconspirator statements are not subject to the requirements of Rule 602."); see also United States v. Southland Corp., 760 F.2d 1366, 1367 n. 4 (2d Cir.1985) (recognizing tension between requirements of Rule 801(d)(2) and Rule 602 and that several Circuits did not require personal knowledge for admissibility of party admissions). Of course, the defendants may question Houldsworth about these qualifying statements on cross-examination, but the Court is unconvinced that, taken in context, they are indicative of a serious reliability problem that so significantly reduces the statement's probative value as to require its exclusion under Rule 403. The statement's high probative value is also not substantially outweighed by the risk of prejudice to Milton under Rule 403's balancing test, especially in light of the Court's other evidentiary rulings that will limit the jury's exposure to prejudicial information about AIG.

### 8. Government Exhibit 112

■ The defendants object to statements made by Tad Montross, Gen Re's Chief Underwriting Officer, during a December 11, 2000 conversation with Houldsworth, in which Houldsworth confirmed that Montross knew that Ferguson supported the LPT.[22] The defendants argue that Montross's statements are inadmissible hearsay because he is not an alleged coconspirator. Alternatively, the defendants argue that his statements "Ron signed off on this [the LPT] since it's his deal," and "[n]ow this is clearly Ron's"

**21.** The defendants object to the statements on page 2 at lines 6–15.

**22.** The defendants object to the statements on page 3 at lines 18 to 26.

are unduly prejudicial to defendant Ferguson.

The Court finds that Montross's first statement, at page 3 line 18 ("Ron signed off on this [the LPT] since it's his deal"), is admissible to provide context for Houldsworth's statements in furtherance of the conspiracy. Houldsworth's statements are admissible under Rule 801(d)(2)(E), and Montross's first statement shows that Houldsworth accomplished his goal for the call: ensuring that other members of Gen Re's management would not question the LPT because Ferguson supported it. The Court will give the jury a limiting instruction that Montross's statement may not be considered for its truth, but only to provide context for Houldsworth's statements in furtherance of the conspiracy. However, the Court excludes Montross's second statement, at page 3 line 26 ("[n]ow this is clearly Ron's"), on the ground that it risks unduly prejudicing defendant Ferguson. Although the first statement provides necessary context to show that Houldsworth successfully advanced the conspiracy through the call, the second statement unnecessarily re-emphasizes Ferguson's affiliation with the deal and would needlessly risk unduly prejudicing him.

### 9. Government Exhibit 312

The defendants object to a portion of a March 12, 2002 conversation between Vukelic and John Byrne, who was the Chief Executive Officer of CRD at the time, in which Vukelic and Byrne discuss a list of transactions that presented "reputational risk" to Gen Re.[23] Byrne was preparing such a list for Gen Re's general counsel[24] because the general counsel planned to conduct a company-wide "reputational risk" audit. During the conversation, Vukelic recommended that Byrne include the LPT on the list as a transaction with high reputational risk. The government offers these statements as non-hearsay under Rule 801(d)(2)(E). The gov-

ernment argues that Vukelic encouraged Byrne to bring the general counsel's attention to the LPT because Vukelic wanted the general counsel to know that the LPT received approval from Gen Re's upper management. This was in furtherance of the conspiracy, the government contends, because Vukelic knew the general counsel would purposefully avoid raising any alarm bells about the nature of the transaction if he knew that Ferguson and Monrad signed off on it. The defendants argue that Vukelic's recommendation to include the LPT in a reputational risk audit could not have been in furtherance of hiding the alleged fraud, and hence the excerpted portions of the conversation are inadmissible hearsay.

The Court declines to decide the admissibility of this evidence at this time. Additional context is required to determine whether Vukelic's statements were made in furtherance of the conspiracy.[25] *See Van Putten,* 2005 WL 612723, at *3. Therefore, the defendant's motion to exclude this portion of the exhibit is denied without prejudice to being reasserted should the government choose to offer it into evidence.

### III. Motions to Sever

Defendants Milton, Monrad, Ferguson, Graham, and Garand each made motions to sever themselves and other defendants for separate trials. The Court addresses these severance motions in turn.

### A. Legal Standard for a Motion to Sever under Fed.R.Crim.P. 14(a)

A criminal defendant seeking a severance bears a heavy burden. "There is a strong preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). "This preference is particularly strong where ... the defendants are alleged to have participated in a common plan or

---

**23.** The defendants object to the statements on page 2, line 29 through page 4, line 11 and on page 6, lines 3 through 26.

**24.** The general counsel is also an unindicted co-conspirator in this case.

**25.** In reaching this conclusion, the Court notes that Byrne is not an alleged co-conspirator in this case.

scheme." *United States v. Salameh,* 152 F.3d 88, 115 (2d Cir.1998); *see United States v. Spinelli,* 352 F.3d 48, 55 (2d Cir.2003) ("Joint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy, as is the case here."). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. A defendant seeking a severance bears the burden of establishing this significant risk. *See United States v. Megale,* 363 F.Supp.2d 359, 366 (D.Conn.2005) (citing *United States v. Blount,* 291 F.3d 201, 209 (2d Cir.2002)). "The decision whether to sever is committed to the sound discretion of the trial judge, and the denial of a severance motion [will] be reversed only when a defendant can show prejudice so severe as to amount to a denial of a constitutionally fair trial." *Blount,* 291 F.3d at 209 (citations and quotation marks omitted).

### B. Milton's Motion to Sever

■ Milton moved to exclude evidence of the transactions underlying the Coral Re transaction, which is one of the Schedule A transactions addressed in part I.A above, or, alternatively, to sever either himself or defendant Garand under Fed.R.Crim.P. 14(a) to be tried separately. Milton argues that if the government were permitted to offer evidence that the Coral Re transaction, which involved AIG, was fraudulent, he, as the sole defendant affiliated with AIG, would suffer prejudice so severe that a severance would be justified. Alternatively, Milton seeks the severance of defendant Garand, against whom the government would seek to admit this evidence, to avoid the evidence's prejudicial effect at trial.

The Court considered the admissibility of this evidence in part I. A above and found it to be inadmissible under Rule 403. In light of this, there is no risk of prejudice to Milton that justifies severing him or defendant Ga-

rand from this case. Accordingly, his motion to sever is denied.[26]

### C. Graham's Motion to Sever

Graham moved to exclude the Rule 404(b) evidence the government plans to offer against him—specifically, any evidence relating to the deals underlying the Coral Re Schedule A transaction. He also moved for a severance on the ground that the rest of the 404(b) evidence the government proposes to use against his co-defendants is not admissible against him, so its use would create a serious risk of undue spillover prejudice. Graham also urges the Court to reconsider its denial of his previous motion to sever. *See United States v. Ferguson,* 478 F.Supp.2d 220, 246 (D.Conn.2007).

With regard to Graham's motion to exclude the 404(b) evidence against him, this issue is moot in light of the court's ruling in part I.A of this opinion. The government gave Graham notice that it would seek to use evidence concerning the fraudulent nature of the deals underlying the Coral Re Schedule A transaction as Rule 404(b) evidence against him. Since the Court has ruled such evidence to be inadmissible, Graham's arguments to exclude it need not be addressed.

■ Graham's motion for a severance based upon the government's Rule 404(b) evidence against his co-defendants falls short for the same reason. "A defendant raising a claim of prejudicial spillover bears an extremely heavy burden." *United States v. Nerlinger,* 862 F.2d 967, 974 (2d Cir. 1988). As with all grounds for a severance, the defendant must show prejudice so severe that his constitutional right to a fair trial will be violated. *Blount,* 291 F.3d at 209. A limiting instruction may adequately reduce the risk of prejudice to a defendant even in cases where evidence is presented against one defendant that would not be admissible in a separate trial of a co-defendant. *Spinelli,* 352 F.3d at 56 (quoting *United States v. Carson,* 702 F.2d 351, 367

26. Defendants Ferguson and Monrad also moved to sever either themselves or defendant Garand to be tried separately, and they joined Milton's memorandum of law in support of their motions. Since their arguments supporting their motions are identical to Milton's, their motions are denied for the same reasons.

(2d Cir.1983)). In light of the Court's ruling on the government's Rule 404(b) evidence in part I.A of this opinion, there is no evidence Graham will suffer such severe prejudice. The government may not present evidence concerning the fraudulent or deceptive nature of the deals underlying the Schedule A transactions. Although the Court deferred its ruling on the non-Schedule A transaction evidence until the time of trial, the government's assertion that it will only seek to use this evidence should the defendants open the door to it indicates that, at this time, the evidence presents only a marginal risk of prejudice to Graham. Since the Court's other evidentiary rulings considerably reduce the risk of any prejudice to Graham, there is no justification for granting him a severance.

Finally, the Court declines to revisit its January 24, 2007 ruling denying Graham a severance. Graham argues that the additional prejudice he will suffer from the government's 404(b) evidence, when considered in concert with his arguments in favor of his previous severance motion, tips the balance of interests in favor of granting him a separate trial. However, as the Court has limited the scope of the government's 404(b) evidence, its use will create no additional risk of prejudice to Graham. Absent any new source of prejudice to Graham, there is no need to reexamine his original motion to sever.

### D. Garand's Motion to Sever Himself

Garand moves for a severance pursuant to Fed.R.Crim.P. 14(a) because two of his attorneys, Robert Cleary ("Cleary") and Richard Spinogatti ("Spinogatti"), of the law firm Proskauer Rose LLP ("Proskauer Rose"), will be unavailable for jury selection on December 3, 2007 and the start of evidence on January 7, 2008 due to another trial in New York Supreme Court. Graham argues that his Sixth Amendment right to the counsel of his choice mandates a continuance of the government's case against him and that he be tried separately, at a time when Cleary and Spinogatti are available.

"[T]he Sixth Amendment secures the right to the assistance of counsel, by appointment if necessary, in a trial for any serious crime." *Wheat v. United States*, 486 U.S. 153, 158, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). However, "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects." *Id.* at 159, 108 S.Ct. 1692. For instance, a defendant's exercise of this right " 'must at times give way to the need for the fair and efficient administration of justice.' " *United States v. Scopo*, 861 F.2d 339, 344 (2d Cir.1988) (quoting *United States v. Cicale*, 691 F.2d 95, 106 (2d Cir. 1982)); *see Lainfiesta v. Artuz*, 253 F.3d 151, 154 (2d Cir.2001) ("This qualified right may be overcome when it is outweighed by competing interests in the fair administration of justice or maintaining orderly trial procedures."). This is because "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159, 108 S.Ct. 1692 (citing *Morris v. Slappy*, 461 U.S. 1, 13–14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)). In light of the Amendment's underlying focus, "where the inability of retained counsel to serve gives promise of unreasonable delay or inconvenience in completing the trial, the court may require the defendant to secure other counsel." *Scopo*, 861 F.2d at 344 (quoting *Cicale*, 691 F.2d at 106). A district court has broad discretion to deny a request to postpone a trial to accommodate defense counsel's schedules; "only an unreasoning and arbitrary insistence upon expeditiousness [by the district court] in the face of a justifiable request for delay violates the right to the assistance of counsel." *Id.* (quoting *Slappy*, 461 U.S. at 11–12, 103 S.Ct. 1610 (internal quotation marks omitted)).

Given the limitations on a defendant's right to the counsel of his choosing and the burden Garand must satisfy to justify his severance, Garand's motion is denied. As explained above, Garand's right to the counsel of his choosing is not absolute. *Wheat*, 486 U.S. at 159, 108 S.Ct. 1692. The Court scheduled this trial nearly one year in advance to commence on December 3, 2007. In selecting this date, the Court acknowledged Attorney Cleary's statement at a November 1, 2006 hearing that he would only be

available for trial in the summer of 2007 or "in early '08." [27] The December 3, 2007 trial date also reflected a balance of numerous other interests, including the rights of Garand's four co-defendants to an expeditious trial, the public's interest in resolving this matter at trial, the Court's schedule, and the schedules of all of the other attorneys involved with the case. *See Scopo*, 861 F.2d at 344 (upholding denial of continuance based upon scheduling conflicts of one co-defendant's attorney where trial judge balanced numerous considerations to set trial date several months in advance); *Cicale*, 691 F.2d at 106–07 (same). In light of the accommodations the Court already made for Garand's counsel, and the other significant interests at stake should an additional continuance be granted, the Court declines to continue the current trial date on this basis.[28]

Further, since a defendant's right to the counsel of his choosing " 'must at times give way to the need for the fair and efficient administration of justice,' " the Court also declines to grant Garand's severance motion. *Scopo*, 861 F.2d at 344 (quoting *Cicale*, 691 F.2d at 106). Attorney Cleary's declaration in support of this motion states that he learned on September 5, 2007, over four months prior to the start of evidence in this case, that he would be unavailable for this trial as scheduled due to other trial commitments. This considerable notice provided Garand with ample opportunity to obtain alternative trial counsel. *See e.g., United States. v. Marcus Schloss & Co.*, No. 88CR796, 1988 WL 140794, at *3 (S.D.N.Y. Dec.20, 1988) (finding adequate four months notice to defendants to secure alternate counsel in multi-defendant prosecution for conspiracy and financial crimes). As happens to be the case here, however, two other senior lawyers from Attorney Cleary's law firm, Anthony Pacheco ("Pacheco")[29] and Jonathan E. Rich ("Rich"),[30] have also repre-

sented Garand since prior to his indictment and throughout this case; indeed, Pacheco accompanied Garand to his arraignment. According to the biographical information available on Proskauer Rose's website and Attorney Pacheco's representations to the Court, both he and Rich have significant criminal trial experience, including experience with complex white collar prosecutions. *See United States v. Cronic*, 466 U.S. 648, 657 n. 21, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ("If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance."). Against this backdrop, Garand falls far short of showing a "serious risk" that his inclusion in the currently scheduled trial would compromise any of his trial rights, including his Sixth Amendment right to choose his counsel. *See Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. Hence, his motion is denied.

### IV. Conclusion

For the reasons given above, the defendants' motion to exclude the government's Rule 404(b) evidence [docket # s 512, 509, 511, 517] and the defendants' motion to exclude statements from recorded conversations [docket # s 637, 614, 621, 639, 632] are granted in part, denied in part, and denied without prejudice in part. Defendant Graham's motion to exclude the government's 404(b) evidence and for severance [docket # 497]; defendant Milton's motion for severance [docket # 498]; defendant Ferguson's motion for severance [docket # 510]; defendant Monrad's motion for severance [docket # 508]; and defendant Garand's motion for severance [docket # 600] are denied.

SO ORDERED.

---

27. At the subsequent December 11, 2006 telephone scheduling conference, the government and several of the defendants requested that the trial start in May, 2007, although they expressed the concern that it could be difficult to find sufficient jurors available to serve for eight weeks during the summer.

28. The Court recently granted the parties an additional partial continuance, so that jury selec-

tion will take place on December 3, 2007, as originally scheduled, but the evidence in the case will start on January 7, 2008.

29. Attorney Pacheco is a partner at Proskauer Rose.

30. Attorney Rich is senior counsel at Proskauer Rose.